Good morning, your honors. May it please the court, Michelle Jacobs for the defendant, Mr. Conor. The government has conceded here that the district court erred as a matter of law when it operated under the assumption during the resentencing on remand that it was limited essentially to the supervised release conditions issue. There was this withdrawal of attorney issue that everyone sort of let go because it was going to be dealt with during the sentencing hearing. The court under Thompson in this court's cases in Mobley and Lewis had the authority to alter any aspect of the sentence on remand. And the defendant repeatedly asked the court to do that. At his peril. I'm sorry? At his peril. At his peril. That I understand. That I understand. But he did repeatedly ask. And it's our position because the resentencing essentially was not procedurally sound that the sentence should be vacated and the case remanded. Why isn't it harmless? It is not harmless for a couple of reasons. First, the government suggests that it's harmless because the district court made this alternative finding that if it had the authority, it wouldn't exercise it. But I'd ask the court to look carefully at page four of the sentencing transcript, which is where that finding is made. The government says to the court, if the court had authority, we don't think you should exercise it. And I quote, even if the court had the authority, you wouldn't consider issues that were already addressed at the first sentencing and readdress them today. And the court said, no, I would not. But there were additional issues that the defendant had raised in his sentencing memorandum that had not been addressed at that first sentencing. And this court in Mobley and this court in Lewis has said that this is essentially a complete do-over, including new issues, if the court chooses to do so. Now, I recognize the court has that discretion. But it seems here that that finding was pretty carefully, by the government and then the district court, limited to... Does the defendant change his entire thing of how much was embezzled and how many people were embezzled? The argument that essentially he was making was that there was conduct that had been considered relevant conduct that was not. He agreed to all that. At the first sentencing, there was no challenge. I don't dispute there was no challenge to the relevant conduct at the first sentencing. The main thing is practically, realistically, why in the heck should we send this case back for 10 or more years that he'll receive? You should send this case back because in two respects, it's not procedurally... You want us to really sentence. That's what my view has been forever, because you get another shot at the sentencing. Then let us look at the reasons and rationale to change the sentence. What if we find there wasn't any? I'm not sure I understand the question, Judge. I'm sorry. If I were sitting as a trial judge, would I really consider what you argued as a reason to change a 10-year sentence with no supervised release? Would you consider changing the 10-year sentence? I don't know. I don't know. Well, of course you don't know. You're not the sentencing judge. I am. Right. But what I do know, Judge, is that there's two problems here. The other problem, and I think it's important, is the defendant here had a right to elocution. And he did get to speak, there's no doubt, because he was pro se. But please at least take note that by the bottom of page 4 of the sentencing transcript, before the defendant has said anything other than, I should get a chance to dispute these... Judge, can you tell me why you don't get elocution if you're arguing your own case? No, I'm saying that the sentence was imposed before he got to speak. At page 4 of the sentencing transcript, the district court says, I'm giving you 10 years again, and the only thing we're here to talk about is supervised release. And, in fact, when he was invited to speak, he was invited to speak only about the issues that, as the court said, it had authority to address. And it was mistaken. There's no question here. Then maybe we ought to change the law. Well, that's obviously your... that is within your purview, there's no doubt. But under Mobley and under Lewis, I would suggest that because the sentencing hearing, the remand, was not procedurally sound, this court has said the defendant gets a new shot. I mean, whether you agree with that or not, I guess, is a different issue. But that is the law as it stands now. That's why it was an error. But the question is whether it was harmful on this record. In other words, whether there was any prejudice to him, whether there's the remotest possibility that Judge Young is going to change his mind. Well, again, I will say when the defendant challenged the relevant conduct, the government came to the sentencing saying, we're prepared to present evidence here today. And that never happened. So given the objection, given that the defendant has made the argument that, while it may have been sort of sharp elbow dealings and that sort of thing, that part of the conduct is not criminal or is not, at the very least, not relevant conduct to the count of conviction. The judge has made it clear that an argument like that would be perceived as backpedaling on his acceptance of responsibility. So that's not going to help him to have this issue aired in a more complete way. I mean, we're here on either harmless error review or possibly plain error review. But there has to be some substantial prejudice. And I just don't see how the result would have been different had he been allowed to make all of these arguments that he wanted to make. So he concedes the Mobley error. The law is what it is. I hope we're finally coming to the end of these Thompson remand issues. I think we all are. But on this record, I'm looking for prejudice, which we need to find in order to find reversible error. Well, even if this court were to find that on the relevant conduct issue that the court would not have done anything differently, or maybe if it's not relevant conduct, the court was likely to have still imposed the 10-year sentence, I still would ask the court to really carefully take a look at the allocution error. Because although I understand, Judge Kaney, I do understand what you're saying with respect to, and Judge Sykes, the lack of change or the likelihood that the sentence wouldn't change, there still is, I think, an error that undermines really the fairness of the judicial process here. That this defendant, while representing himself, essentially received the imposition of his sentence before he was allowed to speak at all, and then when invited to speak, was essentially told what he gets to talk about. He gets to talk about the supervised release error, or supervised release issue, and I think the government invited him to talk about rehabilitative efforts, because sometimes those things come up in these resentencings. But the sentences had already been imposed. And that ultimately, I would suggest, really does undermine the fairness of this process, and should warrant, along with the other errors here, a complete resentencing. So for those reasons, I would ask the court to vacate the sentence, and hopefully for the last time, remand for a complete resentencing, where Mr. Conner can air these issues and will be given a right to allocution. Thank you. Mr. Boone. Good morning, Your Honor. It's Jason Baum on behalf of the United States. I think when we talk about his allocution to Judge Young, it's important to keep the entire context of this criminal proceeding in mind. Judge Young was very familiar with Mr. Conner by the time of this resentencing. He had presided over a case that the prosecutor changed in it, and the defense lawyer changed, but Judge Young was there the entire time. He knew Mr. Conner very well. That's usually the case. It is, but I think in this context, especially given he knew what Mr. Conner wanted to talk about. Mr. Conner had filed a prosecution. Mr. Boone. Yes. Forgive me. It really pains me to think of this case going back. Let me just say that. But we would have to totally override United States v. Mobley and Lewis. We would just have to change the law of our circuit. The man did not have any opportunity to allocate. The judge misunderstood what Thompson remand was all about. He actually said, I can't consider your arguments because I'm not authorized to reopen those matters. We have no idea whether the district judge considered Conner's new arguments on the merits because he didn't let him speak. And our circuit law is clear on that. Yes, I'm as certain as you are that it's a waste of time. But it's our – otherwise, we just have to change the law in the circuit. I don't believe you do, Judge Rovner. The Lewis case provides that even when the judge misunderstands, which is what happened in Lewis, but says if I had the authority, I wouldn't exercise it. And perhaps I was inartful in the way I asked the district court if it would exercise. But in Lewis, Lewis had the opportunity to be heard on his merits, unlike Conner. I mean, Lewis got the – Lewis also says, Your Honor, that the new arguments that the defendant wants to raise have to be potentially meritorious. There is nothing potentially meritorious about the arguments. Three arguments Mr. Conner wanted to raise were the district court lacked subject matter jurisdiction, that the indictment or the information he pled guilty did not state a crime, and that his victims weren't really victims after all, but they were beneficiaries. None of those new arguments were potentially meritorious, and the defendant's briefs on this appeal do not even suggest that they're meritorious. There is no – Now, there may somewhere in this nation, God only knows, be a judge who, you know, might have thought that one of those was. We – you get a chance to allocute in our system. You get a chance to allocate. And here the fellow – you know, Conner was not given that opportunity. And if I say it pains me more than it pains you, I believe, to think that it has to go back. But I don't know how to get past that. Well, in terms of allocution, this court's also said we look at the entirety of what happened. And, yes, the district court said at the very beginning, I think 10 years is the right sentence. I got it right the first time. But then he does say before the technical imposition of sentence, Mr. Conner, is there anything else you want to say to the court? He opened it up to him. And Mr. Conner did get to talk about what he did in prison and why he thought a lesser sentence was appropriate. The judge knew the sentence Mr. Conner wanted. He said he wanted a certificate of innocence and to be released immediately. So I think in the substance of what happened, he did have a meaningful opportunity to address the court and ask for what he wanted. So we don't think there's any reason to send this case back. Even though the resentencing was really sort of upside down in that the sort of Alice in Wonderland verdict first, trial afterwards. He announced his sentence first and said, okay, let's make the record. I think on that point, though, it's important to remember why it was an in light of Thompson remand. And the reason Thompson said we remand is its potential that if we augment or get rid of some supervised release condition, that might change the prison term. I can't envision the scenario where the judge says, okay, I'm not going to give you supervised release at all. And I'm going to reduce at the same time your prison sentence.  Right. And I don't disagree with what Judge Roldner has said about the unlikelihood of any change here and the emptiness of a remand in this situation. That seems pretty clear. But the case law is what it is. You know, Mr. Bohm, you never knew Judge Moran, I imagine. I did not. Northern District of Illinois. He was the dearest, nicest man. I can't even explain to you what a sweet man he was. And he believed that it was torture for defendants to stand before him and have to listen to all the horrible things about them and wait for the sentence. So he decided to start giving the sentence first and then telling them that they weren't nice people. And let me tell you, the case law, he was shot down like nobody on earth, even though he was doing it out of the kindness of his heart. So, I mean... I understand that, Judge Roldner. And I think there's a...in Lewis, I think it is perhaps as well. It's torturous, frankly, for the victims of Mr. Conower to have to go through this again. So I don't think...I think the law is able to craft a remedy that doesn't torture anyone any longer in this case. Unless there are any questions. Thank you. Thank you. Ms. Jacobs? You have one minute. I'll give you two if you want them. I won't use it all up. The only thing I want to make clear here is Lewis is applicable on the harmless error question. But in Lewis, remember that the district court did make the findings that were then disputed as to whether or not it was harmless. It was...the only question was this breach of the clear agreement question and the district court had answered it. So it was very easy for this court to deal with the harmless error because it really had...the issues had been dealt with in Lewis and they weren't here. For that reason and because of the allocution error, I would ask that the case be remanded. Thank you. Thank you. Thanks to both counsel. Case is taken under advisement.